```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

MARYVILLE HOTEL ASSOCIATES I,    )
LLC,                             )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    No. 4:05 CV 1493 DDN
                                 )
IHC/MARYVILLE HOTEL CORPORATION, )
                                 )
            Defendant.           )

### MEMORANDUM

This matter is before the court upon the motions of plaintiff Maryville Hotel Associates I, LLC, (MHA) (Doc. 24) and defendant IHC/Maryville Hotel Corporation (IHC) for summary judgment (Doc. 13). The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) A hearing was held March 10, 2006.

### The Pleadings

Plaintiff MHA has brought this action for specific performance against defendant IHC to compel defendant to comply with Article XIV of the Operating Agreement they entered. Plaintiff originally sued defendant in the Circuit Court of St. Louis County. Defendant removed the case to this court based on diversity of citizenship.

Plaintiff alleges that it and defendant are each 50 percent member owners of the Maryville Centre Hotel Limited Liability Company (MCHLLC). On or about March 1, 2001, they entered into an Operating Agreement for the ownership and operation of MCHLLC. Plaintiff alleges the Operating Agreement restricts the parties' ability to sell or dispose of their interests, either directly or indirectly, in the MCHLLC. Plaintiff alleges that defendant failed to comply with this restriction when defendant's interest in the MCHLLC was indirectly transferred by the sale of its corporate grandparent's stock without the required notice to plaintiff.

In its answer defendant alleges the undisputed facts did not trigger the right of first offer and that plaintiff's claims are barred by the doctrines of unclean hands and estoppel.

Both parties have moved for summary judgment.

**Summary Judgment Standard**

Summary judgment must be granted, when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Union Elec. Co., 378 F.3d at 785. A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if substantial evidence exists so that a reasonable jury could return a verdict in favor of the non-moving party. Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1055 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 2004 WL 2153070 (U.S. Nov. 1, 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

**Undisputed Facts**

The following material facts are without substantial dispute. Plaintiff Maryville Hotel Associates, LLC, and defendant IHC/Maryville Hotel Corporation, are the only members of the Maryville Centre Hotel Limited Liability Company (MCHLLC). Each of them has a 50 percent interest in the MCHLLC. Defendant is a wholly owned subsidiary of Patriot American Hospitality, and Patriot is a wholly owned subsidiary of Wyndham International, Inc. (Wyndham). Therefore, Wyndham is the "grandparent" corporation of defendant. (Doc. 16 at 1-2.)

On or about March 1, 2002, plaintiff and defendant entered into an Operating Agreement for the operation of the MCHLLC. Article XIV of the Operating Agreement provides a "right of first offer" for the transfer of an interest in the MCHLLC:

>    1.   <u>Restriction on Transfer</u>.  No Member shall have the right to sell or otherwise dispose of its Company Interest, or any part thereof, directly or indirectly, except as provided hereinbelow in this Article XIV.
>
>    2.   <u>Right of First Offer</u>.  In the event any Member desires to sell or transfer its Company Interest, or a portion thereof, such Member (for purposes of this Section XIV.2, the "Selling Member") shall offer its Company Interest, or a portion thereof, for sale to the other Member by sending a notice to the other Member advising such other Member of the Selling Member's offer of its Company Interest, or part thereof, for sale and the proposed terms of sale.  The non-Selling Member shall then have 60 days in which to notify the Selling Member of its determination to purchase the Company Interest, or portion thereof, offered for sale upon said proposed terms, and said proposed terms only.  If the non-Selling Member so elects to purchase, . . . .

(Doc. 16 Ex. 1, Ex. A at 26.)

The Operating Agreement defines "Company Interest" as "the Interest of a Member of the Company" and defines "Interest" as "an ownership interest in the Company, including any and all benefits to which the holder of such an Interest may be entitled as provided in this Agreement, together with all obligations of such Person to comply with the terms and provisions of this Agreement."  "Member" is defined as "Manager and Other Member, singularly or collectively, as Members under this Agreement."  "Manager" is defined as "Maryville Centre Hotel Associates, I, L.L.C., a Missouri limited liability company."  "Other Member" is defined as "IHC/Maryville Hotel Corporation, a Delaware corporation."  (<u>Id.</u> at 4-6.)

Plaintiff and defendant are the only parties to the Operating Agreement.

On or about June 14, 2005, Wyndham, defendant's corporate grandparent, entered into an agreement with Wind Hotels Acquisitions, Inc. (Wind Acquisitions), and Wind Hotel Holdings, Inc. (Wind Holdings), both affiliates of The Blackstone Group.  Pursuant to the agreement, Wind Acquisitions purchased 100 percent of the outstanding common and preferred stock of Wyndham, and Wyndham merged with Wind Hotels Acquisitions.  Wyndham became the surviving corporation.  (Doc. 26 at 5.)

Further, in connection with this transaction, on August 16, 2005, Wyndham transferred all of its stock, which it removed from the national securities exchange, to Wind Holdings to be held privately.  Now, Wyndham

is a privately held corporation and a wholly owned subsidiary of Wind Holdings. In the merger transaction, no Wyndham corporate assets or property interests were transferred. Defendant and plaintiff remain 50 percent owners of the MCHLLC, and remain the only two members of the Operating Agreement. (Id. at 5-6.)

## Discussion

The dispute in this case involves the interpretation of the "right of first offer" (ROFO) provision in the Operating Agreement. The parties disagree about the scope of "indirectly" in the ROFO provision[1] and whether it includes the merger transaction described above. Plaintiff argues that defendant disposed of its interest in the MCHLLC "indirectly," when Wyndham, defendant's corporate "grandparent," transferred all of its stock to, and merged with, Wind Acquisitions.

In contrast, defendant argues that the plain language of the relevant provision does not trigger the ROFO under these facts. Defendant contends that the sale of Wyndham's stock was not a transfer of *its* interest in the MCHLLC, because a transfer of stock does not transfer title in the assets of the corporations, and the MCHLLC is simply an asset of defendant and defendant is an asset of Wyndham.

The court has diversity of citizenship subject matter jurisdiction over the action.[2] Therefore, the court will apply the Missouri rules of decision to determine what substantive law applies to this contract dispute. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Cordry v. Vanderbilt Mortg. & Finance, Inc., 2006 WL 1118871 at * 2 (8th Cir. 2006)(Missouri contract law applied). This court will apply Missouri law to interpret the Operating Agreement, because the MCHLLC was formed under Missouri law, and the Operating Agreement contains a choice of law provision mandating that the agreement "shall be interpreted in accordance with the laws of the State of Missouri." (Doc. 16, Ex. 1, Ex. A at 34); see Peoples Bank v. Carter, 132 S.W.3d 302, 304 (Mo. Ct. App. 2004).

---

[1]See Article XIV, § 1, supra at p. 3

[2]Defendant is incorporated under Delaware law and has its principal place of business in Texas, plaintiff is a citizen of Missouri, and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332.

-4-

Under Missouri law, "[t]he interpretation to be given a contract on undisputed facts is a question of law." Stotts v. Progressive Classic Ins. Co., 118 S.W.3d 655, 662 (Mo. Ct. App. 2003); Miller v. O'Brien, 168 S.W.3d 109, 115 (Mo. Ct. App. 2005) (whether contract is ambiguous is a question of law). "The cardinal rule for the courts in interpreting a contract . . . is to effectuate the parties' intent at the time of contracting." Bailey v. Federated Mut. Ins. Co., 152 S.W.3d 355, 357 (Mo. Ct. App. 2004). If the contract is clear and unambiguous, the intent of the parties is determined from the document alone. Id.; Armstrong Business Services, Inc. v. H & R Block, 96 S.W.3d 867, 874 (Mo. Ct. App. 2002). "In considering the contract's language, we understand it according to the plain and ordinary meaning of the words used, or the meaning that a person of average intelligence, knowledge, and experience would deem reasonable." Bailey, 152 S.W.3d at 357.

Under Missouri law, rights of first offer are to be strictly construed. See HGS Homes, Inc. v. Kelly Residential Group, Inc., 948 S.W.2d 251, 255 (Mo. Ct. App. 1997). However, under Missouri law, Operating Agreements for limited liability companies can contain "[r]estrictions on the transfer of members' interests in the limited liability company . . . ." Mo. Rev. Stat. § 347.081(1)(6).

Defendant argues that it never sold or otherwise transferred its interest in the MCHLLC in the merger transaction. It further argues that the plain language of the Operating Agreement does not include express language that such corporate mergers trigger the right of first offer. Defendant argues that plaintiff did not bargain for the right of first offer in the event of such a merger. Plaintiff contends that the term "indirectly" should be interpreted to encompass the merger transaction that occurred.

The plain language of the Operating Agreement requires that either plaintiff or defendant sell or dispose of its interest in the MCHLLC, either directly or indirectly, before the ROFO is triggered. Thus, regardless of the scope of "indirectly," in the circumstances of this case *defendant* must have sold or otherwise disposed of *its* interest in the MCHLLC. Nothing in the record indicates that defendant had any active role in the corporate merger of which plaintiff complains.

Plaintiff argues that the facts in the instance case resulted in an "indirect" transfer of defendant's interest in the MCHLLC. It cites <u>H-B-S Partnership v. AIRCOA Hospitality Services, Inc.</u>, 114 P.3d 306 (N.M. Ct. App. 2005), for the proposition that the term "indirectly" is broad and was meant to encompass a wide variety of situations, including actions by a corporate grandparent who was not a direct participant in the operative contractual language.

The <u>H-B-S</u> court, when faced with similar facts, held that the term "indirect" is broad enough to encompass the sale of a partner's corporate great-great grandparent's stock. In <u>H-B-S</u>, EDP was a limited partnership, whose partners included AHS, H-B-S, and NZ. AHS's corporate great-great grandparent, RHC, transferred its stock, so that at the end of the sale, the only change in the structure of these entities was that AHS had a different corporate great-great grandparent. <u>Id.</u> at 310.

The court in <u>H-B-S</u> held that, under the terms of the partnership agreement, the right of first refusal was triggered by the sale of RHC's stock. <u>Id.</u> at 313. The court held that the language of the right of first refusal provided that the ROFR was triggered when

> 'a Partner proposes to sell, assign, or otherwise dispose of all or any part of his interest in the Partnership.' As explained in Article 9.5, the ROFR is triggered by '**any direct or indirect transfer including, without limitation: . . . . the transfer of any equity interest in a Partner which is a corporation, . . . if the transfer . . . results in a change in control of such corporation**.'

<u>H-B-S</u>, 114 P.3d at 313 (emphasis added). The <u>H-B-S</u> court held that the ROFR language was broad and covered the type of transfer of control that occurred within the structure. <u>Id.</u> The court stated that the language "any direct or indirect transfer including, without limitation: . . ." clearly indicated an intent to "maximize the reach of the ROFR."[3] <u>Id.</u>

---

[3] The contract provision that both stated and glossed "indirect" provided:

> 9.5 *Direct and Indirect Transfers*. For purposes of this agreement, restrictions upon the sale, assignment or disposition of a Partner's interest shall extend to any direct or indirect transfer including, without limitation: (a) an involuntary transfer such as a transfer pursuant to a foreclosure sale; **(b) a transfer resulting by operation of law, or as a result of any merger, consolidation or similar action**;

-6-

The court noted that the language showed a "clear intent to restrict corporate sales . . . ." Id. at 315. Further, the court held that the term "transfer" meant "change control of." Id. at 314.

The ruling of H-B-S, however, is not applicable to this case for several reasons. First, the language of the ROFR in H-B-S included change in equity interest in a ROFO agreement signatory, which did not occur in the case at bar. Unlike H-B-S, here there is no clear intent to restrict corporate transaction that occurred. H-B-S, 114 F.3d at 315. Further, the H-B-S court never addressed the issue of whether a party to the applicable agreement actually acted by selling and transferring its interest in a separate entity, as in this case, the MCHLLC.

Upon the record before it, the court recognizes the separateness of corporate entities and does not conclude that the corporate defendant in this case acted to sells or transfers property interests because its corporate grandparent did so. See Ritter v. BJC Barnes Jewish Christian Health Systems, 987 S.W.2d 377, 384 (Mo. Ct. App. 1999) ("Generally, two separate corporations act as distinct legal entities, even if one partly or wholly owns stock in the other.").

Missouri law will not expand a contract's scope by rewriting it. Standard Operations, Inc. v. Montague, 758 S.W.2d 442 (Mo. banc 1988). In Standard Operations, the court interpreted a lease provision restricting assignments and subleases. The court held that the lease provision was not violated when the tenant merged with another corporation. In that case, the court stated:

> The possibility of merger is easily foreseeable. . . . A creditor or lessor who fears merger may obtain the desired protection by insisting on express language. There is no reason to indulge in an expansive construction of general language.

---

and (c) the transfer of an equity interest in a Partner which is a corporation, partnership or other entity if the transfer of the equity interest results in a change in control of such corporation, partnership or other entity. The transfer of a limited partner interest in a Partner which is a limited partnership shall not be considered to result in a change in control of such limited partnership for purposes of the prior sentence.

H-B-S Partnership, 114 P.3d at 309 (bolded emphasis added).

758 S.W.2d at 444. Here, whether or not the merger at the corporate grandparent level was foreseeable, the ROFO provision language did not include it.

Plaintiff argues that interpreting the Operating Agreement to limit only transfers by the members limits only direct transfers, and that it was the parties' intent to limit indirect transfers, which includes transfers like that at issue here. Without such an interpretation, plaintiff argues, the inclusion of "indirectly" in the Restriction on Transfer provision would be meaningless. The court disagrees. An indirect transfer by a party to the subject Operating Agreement might occur when a member sells its interest in the MCHLLC to the member's affiliate[4] which is partly owned by a foreigner to the Operating Agreement and which foreigner also acquires from the member the whole economic interest in the affiliate. Thus, indirectly the member could transfer to the foreigner to the Operating Agreement all the member's economic interest in MCHLLC, circumventing the prohibition against a direct transfer of the member's interest in the MCHLLC and, without the prohibition of such "indirect" transfers, might not trigger the other member's right of first offer.

The language of the Operating Agreement at issue is not ambiguous. It expressly provides that the right of first offer is triggered by a member's act of transferring or selling its interest in the MCHLLC. This is consistent with the purpose of rights of first offer to grant members of LLCs the "right to choose their future associates and prevent unwanted outsiders from participating in the affairs of the" business. Sumners v. Service Vending Co., 102 S.W.3d 37, 42 (Mo. Ct. App. 2003). Here, after the merger plaintiff and defendant are still the only two members of the MCHLLC; a new member has not been forced upon plaintiff. The right of first offer was not triggered by the merger of Wyndham with Wind Acquisitions.

---

[4] The Operating Agreement allows each member to transfer its interest in MCHLLC to an affiliate of the member. See Doc. 16, Ex. 1, Ex. A at 27 (Article XIV § 5, Transfer to Affiliates).

For these reasons, plaintiff's motion for summary judgment is denied. The motion of defendant for summary judgment is granted. The action is dismissed with prejudice. A Judgment Order in accordance with this memorandum is filed herewith.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 5, 2006.